T.C. Memo. 2017-14

UNITED STATES TAX COURT

SILVIA SANTANA, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 22584-14L, 22585-14L,      Filed January 12, 2017.
1774-15L, 1785-15L.

John Edward Leeper, for petitioners.

Brooke S. Laurie and Sheila R. Pattison, for respondent.

MEMORANDUM OPINION

JACOBS, Judge: These consolidated cases were commenced in response

to Notices of Determination Concerning Collection Action(s) Under Section 6320

_____

[1]Cases of the following petitioners are consolidated herewith: Salvador
Santana, Sr., docket Nos. 22585-14L and 1785-15L; and Silvia Santana, docket
No. 1774-15L.

**[*2]** and 6330 and Abatement of Interest Under Section 6404  (notices of determination), dated August 20, 2014, sent to Salvador and Silvia Santana, husband and wife, with respect to their unpaid income tax and  section 6662(a) penalties, accrued interest, and additions to tax imposed by section 6651 for years 2003 and 2004.[2]  On September 22, 2014, petitioners each filed a Petition for Levy Action Under Code Section 6330(d) in this Court regarding their respective notices of determination.  On January 20, 2015, petitioners each filed a Petition for Review of Failure to Abate Interest Under Code Section 6404.

The issues before the Court are (1) whether respondent abused his discretion in not abating the section 6651(a)(3) failure to pay addition to tax related to the earned income credits refunded to petitioners for years 2003 and 2004;  (2) whether respondent abused his discretion in failing to abate all interest accrued on petitioners' unpaid tax liabilities for years 2003 and 2004; and (3) whether respondent abused his discretion in sustaining collection by levy of petitioners' unpaid income tax liabilities for years 2003 and 2004.

---

[2]These cases were consolidated for purposes of trial, briefing, and opinion, pursuant to the order of the Court dated May 14, 2015.  They were submitted to Judge Julian I. Jacobs for disposition by order of the Chief Judge dated August 17, 2016.

**[\*3]** These cases were submitted fully stipulated under Rule 122. Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. At the time of filing of the petitions, petitioners resided in Texas.

Background

Petitioners timely filed their joint 2003 and 2004 Federal income tax returns on which they reported zero tax and claimed refunds (earned income credits) of $5,773 for 2003 and $8,502 for 2004. The Internal Revenue Service (IRS) issued the claimed 2003 refund on April 26, 2004, and the claimed 2004 refund on February 28, 2005. After issuing the claimed refunds, the IRS audited petitioners' 2003 and 2004 income tax returns.

On January 12, 2007, petitioners filed for bankruptcy under chapter 13 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Western District of Texas, El Paso Division. As permitted by the Bankruptcy Code, see 11 U.S.C. sec. 362(b)(9)(B) (2012), on February 13, 2007, the IRS issued a notice of deficiency determining petitioners' tax deficiencies for 2003 and 2004. Despite

**[*4]** the Bankruptcy Code prohibition against commencing a Tax Court proceeding,[3] on April 17, 2007, petitioners' counsel, David P. Leeper, filed a petition in this Court, assigned docket No. 8480-07. The IRS was aware of the bankruptcy petition, and an IRS employee placed a TC 520 bankruptcy freeze code on petitioners' accounts for 2003 and 2004.

On November 26, 2008, Mr. Leeper, and on December 1, 2008, the IRS attorney assigned to the Santanas' case in docket No. 8480-07, signed a stipulation in which it was agreed that: (1) petitioners had income tax deficiencies of $8,070 for 2003 and $13,956 for 2004 and section 6662(a) penalties of $1,614 for 2003 and $2,058.60 for 2004 and (2) petitioners had improperly received an earned income credit in 2003 of $3,131 and an earned income credit in 2004 of $2,850. The parties stipulated that interest would be assessed as provided by law on the deficiencies and penalties due from petitioners. They stipulated further that effective upon the entry of a decision by the Court, petitioners would waive the section 6213(a) restrictions prohibiting assessment and collection of the deficiencies and penalties (plus statutory interest). An agreed decision was

---

[3]Tit. 11 U.S.C. sec. 362(a)(8) (2012) provides, in pertinent part, that a petition filed under 11 U.S.C. sec. 301, 302, or 303 operates as a stay, applicable to all entities, of the commencement or continuation of a proceeding before this Court concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the bankruptcy order of relief.

**[\*5]** prepared on the basis of the stipulation. The parties failed to inform the Court of petitioners' bankruptcy petition when they presented the agreed decision for execution by the Court. On December 17, 2008, the Court entered the decision.

The IRS assessed petitioners' unpaid tax on March 9, 2009, by mailing petitioners notice and demand for payment of tax for both years. Following the mailing of the notice and demand for payment of tax, the IRS assessed the section 6651(a)(3) additions to tax as a consequence of petitioners' failure to pay the amounts of tax required to be shown on their income tax returns.[4]

The entry of the decision occurred while petitioners were in bankruptcy; thus the decision had no legal validity. The parties eventually recognized that had the Court been aware of petitioners' bankruptcy petition, the Court would not have entered the decision. In this regard, on November 19, 2015, the parties filed a written status report stating:

> 9. Respondent's counsel recently discovered the issue regarding the violation of the automatic [bankruptcy] stay and has discussed it with petitioner's counsel.

> 10. Despite the stay violation, respondent and petitioners agree that, pursuant to the Stipulation of the parties in the Tax Court case docket no. 8408-07 [sic], petitioners waived the

---

[4]For bankruptcy proceedings commenced after October 22, 1994, the Bankruptcy Code allows for an assessment of any tax and the issuance of notice and demand during a bankruptcy stay. 11 U.S.C. sec. 362(b)(9)(D).

**[\*6]** restrictions on assessment under I.R.C. § 6213(a). This waiver allowed respondent to make the agreed upon assessments on March 9, 2009 and the assessments are valid.

We treat this signed, written report as petitioners' agreement to waive the restrictions provided in section 6213(a) on the assessment and collection of their unpaid 2003 and 2004 tax. See sec. 6213(d). We also treat the report as the parties' agreement to waive any claim that the assessments were not valid.

Petitioners moved for dismissal of their bankruptcy case, and the bankruptcy court entered a dismissal order on July 16, 2009. The IRS, however, failed to lift the TC 520 bankruptcy freeze designation in its computer system with respect to petitioners. Despite the TC 520 bankruptcy designation in petitioners' administrative file, on July 30, 2009, the IRS mailed petitioners a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, with respect to their unpaid 2003 and 2004 income tax liabilities.[5] Petitioners acknowledged that they received the notice of lien filing and that they did not request a hearing with the IRS Appeals Office.

Petitioners timely filed their 2009, 2010, 2011, 2012, and 2013 Federal income tax returns, on which they claimed refunds. Because of the TC 520

---

[5]The notice of lien filing did not mention any sec. 6651(a)(3) addition to tax.

[*7] bankruptcy freeze code in petitioners' administrative file, the refunds were frozen. Petitioners did not inquire as to the whereabouts of, and made no effort to receive, their refunds until May 21, 2013, when they contacted the IRS inquiring as to the status of their 2012 refund. As a result of petitioners' inquiry, the IRS discovered the TC 520 bankruptcy freeze code placed on petitioners' account; the code was corrected, and the freeze was lifted, by the entry of code TC 521.

The IRS applied the amounts of refunds due petitioners from their overpayments of 2009, 2010, 2011, and 2012 Federal income taxes (as well as overpayment credits from petitioners' 2006 Federal income tax), totaling $16,618.90, against petitioners' outstanding 2004 tax liability. The IRS applied the amount of the refund due petitioners for 2013 against their outstanding 2003 tax liability. Although the actual application of the refunds due petitioners was not made until 2013, the IRS treated the refunds as if made earlier, i.e., on the dates petitioners' respective tax returns were filed--April 15 of the appropriate year. By the application of the refunds on the tax return filing dates, the amount of interest payable by petitioners to the IRS was reduced. Thus, the IRS gave petitioners the maximum possible benefit. Still, these reductions were insufficient to eliminate petitioners' outstanding liabilities. After making these adjustments, on June 17, 2013, the IRS mailed petitioners several Notices CP 49,

[*8] informing them that the IRS had applied each year's refund against their unpaid balances.

Petitioners acknowledged receiving the Notices CP 49, and on June 25, 2013, they mailed a letter (rather than Form 12153, Request for a Collection Due Process or Equivalent Hearing (section 6330 hearing)) to the IRS in which they challenged:

(1) The application of withheld tax returns [sic].
(2) The accounting procedures used to applied tax returns [sic].
(3) The application of interest and penalties due to a mis-coded IRS error.
(4) The failure to not apply interest to dollars withheld during this process.
(5) Not having the ability to have an advocate.
(6) Not following the path set by the tax court.

In their letter, petitioners requested that an Appeals officer from the IRS' Denver, Colorado, office be assigned to review their file and conduct a face-to-face meeting with them. The IRS did not respond to petitioners' letter. Rather, on July 20, 2013, the IRS mailed petitioners a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing. Petitioners then mailed Form 12153, which was signed by their attorney, to the IRS on August 19, 2013, requesting a section 6330 hearing to discuss entering into an installment agreement with the IRS as an alternative to the proposed levy.

**[*9]** Settlement Officer Sylvia Perez was assigned petitioners' case. On January 10, 2014, petitioners mailed Settlement Officer Perez a letter outlining the issues they believed should be considered, including (1) the application of withheld tax refunds against petitioners' outstanding balance; (2) the effect the TC 520 bankruptcy freeze designation error had on the amount of interest and additions to tax; (3) the IRS' failure to apply interest to the amount due them with regard to their refunds; and (4) petitioners' request for a face-to-face hearing. Settlement Officer Perez spoke with Mr. Santana on January 19, 2014, via telephone. Mr. Santana requested an installment agreement as well as a face-to-face meeting in Denver. He did not raise the underlying tax liabilities as an issue to be discussed. The case was administratively transferred within the IRS several times and eventually found its way to the IRS' Denver Appeals Office and assigned to Settlement Officer Linda Andrews.

Settlement Officer Andrews held a section 6330 hearing with petitioners on April 10, 2014. In preparation for the hearing, Settlement Officer Andrews investigated whether the IRS failed to timely remove the bankruptcy freeze code from petitioners' administrative file, and if so, the impact of the delay. Kathy Zwalinski, Operation Support Team Group Leader, Centralized Insolvency Operation, wrote Settlement Officer Andrews:

[*10]  The TC521/63 [the code to remove the bankruptcy freeze] should have posted in 2009.

The case closing was processed systemically.  On 7/17/2009, CIO employee updated AIS to reflect the dismissal of the case and requested the input of TC521 via IIP (Insolvency Interface Program).

IIP would systemically input the TC521 on IDRS and close the case on AIS (Automatic Insolvency System).

I can only speculate since these actions took place in 2009.  It appears that a process J error would have occurred once IIP processing was run.  A CIO clerical employee reviewed the modules and mistakenly did not input the 521/63, due to the multiple TC520/521 on the modules and closed the case on AIS.

On May 21, 2013--a CIO employee received a telephone call from a walk-in office questioning the discharge of the bankruptcy case.  The employee reviewed the account and input the TC 521/63 in order to close the module on IDRS.

At the section 6330 hearing, petitioners argued that because of the IRS' error, the additions to tax and interest, which accrued from the time the decision was entered until the bankruptcy hold was lifted, should be abated.  Petitioners also asserted that they should receive credit for interest on the frozen refunds.  Settlement Officer Andrews agreed that there was justification for a reduction in the amount of the addition to tax.  She noted in their case activity record that she informed petitioners:  "I explained based on what he [Mr. Santana] presented during the hearing, * * * [I] will recommend abatement of the accrued FTP

[*11] [additions to tax] on 30/200312 and 30/200412." In discussing the July 30, 2009, lien notice (an issue not before this Court), petitioners asserted that they could not fully pay their income tax liabilities. However, petitioners did not provide information with regard to their current financial situation or their ability to pay.

Immediately after the section 6330 hearing, Settlement Officer Andrews sent a followup letter to petitioners. She informed petitioners that to request an abatement of interest, they would have to provide a written statement identifying: (1) the type of tax involved; (2) when they were first notified in writing by the IRS of the unpaid amount; (3) the specific period for which abatement is requested; (4) the circumstances of the case; and (5) the reasons failure to abate interest would result in grossly unfair treatment. With respect to the section 6651(a)(3) failure to pay additions to tax, Settlement Officer Andrews instructed petitioners to send her a separate letter explicitly requesting a reduction of the additions to tax as well as their rationale for the request. Settlement Officer Andrews further informed petitioners that upon receipt of the letters, she would transfer the interest abatement issue to an Appeals officer for evaluation, while she herself would address the addition to tax request. Petitioners complied, mailing the IRS two letters, both on April 14, 2014; one letter requested interest abatement, and the

**[\*12]** other requested a reduction in the amount of the section 6651(a)(3) additions to tax.

Petitioners' interest abatement case was assigned to Appeals Officer Antoinette Ridge. Appeals Officer Ridge held a telephone conference with petitioners on June 30, 2014. On July 8, 2014, she recommended a 50% abatement of the interest accrued since March 9, 2009. She based her recommendation on the following analysis:

> While I concede that there was a "miscoding error" on the part of the Service, the Santana's [sic] knew about the deficiency for both 2003 and 2004 since their attorney signed the Decision Document and they did not pay the amount owed for both years.
>
> While the Santana's [sic] knew that various tax refunds were on hold, they did not contact the Service for approximately five years to find out if those refunds were applied to the 203 [sic] and 204 [sic] deficiencies. During those five years, the Santana's [sic] could have been on a payment plan with the Service while the various tax refunds would have been applied automatically to the deficiencies until full [sic] paid.

While Appeals Officer Ridge was considering petitioners' request for interest abatement, Settlement Officer Andrews was considering petitioners' request to eliminate the section 6651(a)(3) failure to pay addition to tax. On August 20, 2014, the IRS issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 and Abatement of Interest Under

**[\*13]** Section 6404. With respect to petitioners' request to abate all accrued interest, the notice of determination adopted Appeals Officer Ridge's analysis and 50% of the interest accrued from March 9, 2009 (the date the IRS assessed the deficiencies in tax and penalties), until April 10, 2014 (the date of the section 6330 hearing), was abated. With respect to petitioners' request that the section 6651(a)(3) failure to pay additions to tax be eliminated, the IRS agreed to eliminate the failure to pay additions to tax relating to petitioners' underpayment of tax but did not agree to eliminate the failure to pay additions to tax relating to the earned income credit because petitioners had received cash refunds for those amounts.

OPINION

## I. Standard of Review

Under section 6331(a), the Secretary may levy upon a taxpayer's property and rights to property if the taxpayer fails to pay tax within 10 days after notice and demand for payment. Section 6330(a) provides that no levy may be made on any property or rights to property of any person unless the Secretary notifies such person in writing of the right to a hearing before the levy is made. Section 6330(a) and (b) and section 6331(d) provide that: (1) the Secretary must give the taxpayer at least 30 days' written notice of his intent to levy and (2) at least 30 days before

**[*14]** any levy begins, the Secretary is required to send the taxpayer written notice of the taxpayer's right to a hearing before the IRS Office of Appeals.

If the taxpayer requests a hearing (i.e., a section 6330 hearing), the taxpayer may raise any relevant issue relating to the unpaid tax or the proposed levy, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives.  Sec. 6330(c)(2)(A).  A taxpayer may challenge the existence or amount of the underlying tax liability if he/she did not receive a notice of deficiency or otherwise have a prior opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B); sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

After the IRS issues a notice of determination, a taxpayer may petition this Court for review thereof.  Sec. 6330(d)(1).  The Court's review of the IRS' determination is subject to the provisions of section 6330.  Where the amount of a taxpayer's underlying tax liability is properly at issue, the Court reviews the IRS' determination de novo.  See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  The Court reviews the IRS' determinations regarding nonliability issues for abuse of discretion.  Hoyle v. Commissioner, 131 T.C. 197, 200 (2008); Goza v. Commissioner, 114 T.C. at 182.  Abuse of discretion exists when a determination is arbitrary, capricious, or

**[*15]** without sound basis in fact or law.  See <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

Respondent states on brief that petitioners are entitled to a de novo review of the imposition of the section 6651(a)(3) addition to tax; respondent implies that petitioners were unable to receive a prior hearing with respect to this issue, and we note that there is no mention of this addition to tax in Letter 3172.  We therefore undertake such a review.  Respondent and petitioners agree that the Court reviews respondent's determination with respect to the abatement of interest under an abuse of discretion standard.

## II.  Additions to Tax

Section 6651(a)(3) imposes an addition to tax in case of failure

> to pay any amount in respect of any tax required to be shown on a return * * * which is not so shown * * * within 21 calendar days from the date of notice and demand therefor * * *, unless it is shown that such failure is due to reasonable cause and not due to willful neglect * * *.

The addition to tax imposed is 0.5% of the amount of unpaid tax per month up to a maximum of 25%.

Section 301.6651-1(c)(1), Proced. & Admin. Regs., interprets "reasonable cause" as follows:

**[*16]** A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship * * * if he paid on the due date. In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to all the facts and circumstances of the taxpayer's financial situation * * *

Thus, the regulation speaks only of reasonable cause arising from an inability to pay.

"Willful neglect" has been interpreted by the Supreme Court in the context of the section 6651(a)(1) failure to file required returns addition to tax to mean a "conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985); see Brunner v. Commissioner, T.C. Memo. 2004-187, aff'd, 142 F. App'x 53 (3d Cir. 2005).

With respect to reasonable cause, we observe that petitioners have not provided the Court with their financial information. Thus, we cannot determine whether they exercised the ordinary care and prudence that they must to demonstrate reasonable cause. See, e.g., Taylor v. Commissioner, T.C. Memo. 2009-27 (where taxpayer failed to introduce evidence regarding her investment in a club or how the club's failure affected her ability to pay her taxes, finding that

[*17] "[b]ecause of the lack of evidence regarding petitioner's investment in the club, we cannot conclude that the investment constituted reasonable cause for her failure to pay her 1998, 2000, and 2001 tax liabilities by their respective due dates").[6]  Despite petitioners' failure to provide Settlement Officer Andrews with the necessary information, she reduced, but did not eliminate, the section 6651(a)(3) addition to tax imposed on them.  We will not disturb her determination.

III.    Abatement of Interest

Interest generally begins to accrue on a Federal tax liability from the last date prescribed for payment of the tax and continues to accrue until payment is made.  See secs. 6601(a), 6622.  Interest may be assessed at any time within which the tax to which the interest relates may be collected.  Sec. 6601(g).

Section 6404(e)(1) provides, in pertinent part, that the Secretary may abate the assessment of interest on any payment of tax to the extent that any unreasonable error or delay in payment is attributable to an officer or employee of the IRS being erroneous or dilatory in performing a ministerial or managerial act.  For purposes of section 6404(e)(1) "an error or delay shall be taken into account

---

[6]Because we conclude that petitioners have not established reasonable cause for their failure to timely pay their tax liabilities, we need not decide whether their failure was due to willful neglect.

**[*18]** only if no significant aspect of such error or delay can be attributed to the taxpayer involved".

If the IRS declines a taxpayer's request to abate interest, section 6404(h) vests the Court with jurisdiction to determine whether the Secretary's failure to abate interest was an abuse of discretion, and to order an abatement if the taxpayer meets certain requirements not relevant in this case. As the Court noted in Lee v. Commissioner, 113 T.C. 145, 149 (1999): "Congress intended for the Commissioner to abate interest 'where failure to abate interest would be widely perceived as grossly unfair.' H. Rept. 99-426 at 844 (1985), 1986-3 C.B. (Vol.2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol.3) 1, 208. Congress, however, did not intend that abatement "be used routinely to avoid payment of interest.' Id."

To prevail under section 6404(e), the taxpayer must (1) identify an error or delay by the IRS in performing a ministerial or managerial act; (2) establish a correlation between the error or delay by the IRS and a specific period for which interest should be abated; and (3) show that he or she would have paid the tax liability earlier but for the error or delay. See Paneque v. Commissioner, T.C. Memo. 2013-48; Hancock v. Commissioner, T.C. Memo. 2012-31. If these factors are present, the taxpayer must also show that, in denying the taxpayer's interest

**[*19]** abatement request, the Secretary abused his discretion, i.e., exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. Sec. 6404(h)(1); Lee v. Commissioner, 113 T.C. at 149; see Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

The IRS, by its own admission, miscoded petitioners' account, a ministerial error. The erroneous bankruptcy code froze petitioners' claimed refunds and prevented the IRS from properly communicating with petitioners regarding their claimed refunds until May 21, 2013, thus satisfying the first two requirements of section 6404(e). Petitioners argue that they meet the third requirement in that they were waiting for the IRS to communicate with them regarding their unpaid income tax liabilities before making payments, a communication that never occurred until the IRS corrected the coding error after petitioners enquired about their missing 2012 refund in 2013. But in fact the IRS did communicate with petitioners; specifically, the IRS mailed a notice and demand letter to petitioners on March 9, 2009, and a notice of lien filing on July 30, 2009. Petitioners acknowledged that they received the notice of lien filing, which should have alerted them that the IRS had commenced collection activities against them and their property. The notice of lien filing cannot be seen as anything other than a communication regarding petitioners' unpaid income tax liabilities.

[*20] Petitioners' reliance on Hancock v. Commissioner, T.C. Memo. 2012-31, is misguided. In that matter, under the closing agreement no interest was due from the taxpayers with respect to their unpaid 2005 and 2006 income tax liabilities. Despite the closing agreement, the IRS applied interest in the notice and demand. At trial the Commissioner conceded that the IRS had abused its discretion in rejecting the taxpayers' request for interest abatement and offered an abatement of the accrued interest for part of the contested period. We rejected the Commissioner's position, pointing out that his rationale for abating interest for part of the period involved was equally applicable for the remainder of the time and ordering the abatement of all accrued interest. The instant cases do not turn on whether interest is applicable to petitioners' unpaid income tax liabilities; it is. And the facts demonstrate that petitioners had at least some notice that the IRS' collection activities had begun. Consequently, we cannot say petitioners have established that they would have paid the tax liabilities earlier but for the error or delay, and we cannot conclude that the IRS' refusal to abate all of the accrued interest is arbitrary, capricious, or without sound basis in fact or law (i.e., an abuse of discretion).

**[*21]** IV.    Other Matters

Petitioners failed to offer a collection alternative at their section 6330 hearing.  They also failed to provide Settlement Officer Andrews with the financial information she requested.  Petitioners have not introduced any evidence or made any argument that would indicate that respondent's determination to sustain the levy proposed to collect their unpaid income tax liabilities was arbitrary, capricious or without sound basis in fact or law.  We therefore hold that respondent did not abuse his discretion with respect to this issue.

Section 6330(c)(3) requires that the settlement officer verify that the requirements of applicable law and administrative procedure have been met and consider whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection be no more intrusive than necessary.  The notice of determination states that Settlement Officer Andrews verified that the requirements of all applicable law and administrative procedure were met[7] and determined that the proposed levy action appropriately balanced the need for the efficient collection of taxes with petitioners' concerns that the collection actions be no more intrusive than

---

[7]As noted supra pp. 4-6 petitioners waived restrictions on assessment and collection and confirmed their waiver in the status report filed with the Court.

[*22] necessary. We are satisfied that the mandate of section 6330(c)(3) has been met and that Settlement Officer Andrews properly sustained the imposition of the levy against petitioners' property.

## V. Conclusions

(1) Respondent did not abuse his discretion in not abating the section 6651(a)(3) failure to pay addition to tax related to the earned income credits refunded to petitioners for years 2003 and 2004.

(2) Respondent did not abuse his discretion in failing to abate all interest accrued on petitioners' unpaid tax liabilities for years 2003 and 2004.

(3) Respondent did not abuse his discretion in sustaining collection by levy of petitioner's unpaid income tax liabilities for years 2003 and 2004.

Decisions will be entered

for respondent.